

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Mark W. Crooks*　　　　　　　　　　Suite 400　　　　　　　　DIRECT: 410-209-4867
*Assistant United States Attorney*　　　36 S. Charles Street　　　　MAIN: 410-209-4800
Mark.Crooks@usdoj.gov　　　　　　Baltimore, MD 21201-3119　　FAX: 410-962-0716

February 12, 2014

Marc G. Hall, Esq.
Law Offices of Marc G. Hall
200A Monroe Street - Suite 310
Rockville, MD 20850

<u>Re: United States v. Troy Williams, et al – Complaint No. 11-4214SKG</u>

Dear Mr. Hall:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by February 28, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to waive indictment and plead guilty to a one-count Information charging him with Bank Fraud Conspiracy in violation of 18 U.S.C. § 1349. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.  There was a conspiracy to commit bank fraud, that is, a scheme to defraud a financial institution or obtain money or property owned by or under the custody and control of a financial institution by means of false or fraudulent pretenses, representations or promises;

      b.      the defendant knowingly joined the conspiracy; and

      c.      one or more of the banks involved was insured by the National Credit Union Share Insurance Fund at the time of the conspiracy.

### Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 30 years' incarceration, 5 years supervised release, and a fine of $1,000,000. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

      a.      If the Defendant had persisted in his plea of not guilty and not agreed to the one-count Information, he would have had his case presented to a grand jury. Had the grand jury returned an indictment, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status or the right to own or possess a firearm.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a.   The base offense level for Count One is 7. U.S.S.G. § 2B1.1(a)(1).

   b.   Because the intended loss exceeded $30,000 but did not exceed $70,000, an additional 6 level enhancement is added. U.S.S.G. § 2B1.1(b)(1)(D).

   c.   Because the offense involved the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, an addition 2 levels are added. U.S.S.G. § 2B1.1(11).

   d.   This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

   e.   Thus, the Defendant's adjusted guideline offense level after the adjustment for acceptance of responsibility is a level 13.

7.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Restitution

9. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses as set forth in Attachment A. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

10. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

11. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

12. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Obligations of the United States Attorney's Office

13. At the time of sentencing, this Office will recommend a sentence within the Sentencing Guidelines range.

14. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Forfeiture

15. The Defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the court will order the forfeiture of all proceeds obtained or retained as a result of the offense as well as any property used to commit or to facilitate the commission of the offense. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Assisting the Government with Regard to the Forfeiture

16. The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

### Waiver of Further Review of Forfeiture

17. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal or any other means) to any forfeiture carried out in accordance with the Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

18. [Handwritten insertion: The Defendant knowingly waives all rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction] The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the

Page 6

establishment of the advisory guidelines range. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

19. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

20. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if

the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

21. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Mark W. Crooks
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-24-14
Date

Troy Williams

I am Troy Williams' attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3-24-14
Date

Marc Hall, Esq.

## Attachment A: Factual Stipulation

*If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt. The Defendant agrees that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

From around September 2004 through August 2010, Troy Williams ("WILLIAMS") Latesha Brown and others agreed and conspired together to devise and execute a scheme to defraud and to obtain money and property from financial institutions by means of material false and fraudulent pretenses, representations and promises. The financial institutions described herein were federally insured through the National Credit Union Share Insurance Fund.

The scheme involved obtaining fraudulent loans from credit unions using modified and stolen identities. WILLIAMS' and Brown, the organizer of the scheme, worked at the credit unions. Brown processed fraudulent loan applications from WILLIAMS and others. She accepted false paperwork and stolen materials, including forged birth certificates, stolen pay-stubs, false drivers' licenses, false employment letters, false vehicle invoices, misappropriated social security numbers, forged diplomas, stolen notary stamp seals, financial institution stationary, etc. Brown processed the loan applications in a deficient manner, intentionally failing to collect proper supporting paperwork for a loan, such as signature cards or original documents. Further, Brown assisted the individuals in withdrawing their ill-gotten loan funds in such a manner so as to avoid detection.

WILLIAMS and the other individuals involved in the scheme used the knowledge and materials that Brown provided them to apply for fraudulent loans from additional credit unions where, in fact, none of their co-conspirators worked. For example, they used other persons' credit histories and corresponding social security numbers, which Brown misappropriated using credit union software and other means. The individuals, including WILLIAMS, applied for loans using false information, such as vehicle loans with false dealership invoices where no vehicles were to be purchased or, for instance, where the subject vehicle was already owned outright by a member of the scheme.

Brown facilitated the false vehicle loans so that the individuals involved in the scheme received clear titles to their falsely "financed" vehicles without liens being placed on the vehicles. The absence of the liens meant that the credit unions had no collateral when the individuals defaulted on their loans; the credit unions were prevented from seizing the vehicle or other assets belonging to the individuals after the individuals failed to make payments on their outstanding loans. Further, the false social security numbers prevented the credit unions from tracking down the borrowers.

From September 1, 2009 to September 25, 2009, Brown worked at Transit Employees Federal Credit Union using the stolen identity of M.B. and, during that period, opened share savings accounts for her co-conspirators, using stolen social security numbers belonging to real persons, false addresses, and misappropriated pay-stubs belonging to actual persons.

On September 24, 2009, WILLIAMS, approached Brown (working as M.B.) and opened a bank account. WILLIAMS presented as supporting documentation, among other items, a misappropriated and altered Washington Metropolitan Area Transit Authority paystub belonging to J.M. and photocopies of his Guyanese passport and birth certificate, both of which had also been altered. On the same date, WILLIAMS applied for a $15,000 signature loan, presenting his loan paperwork to Brown. WILLIAMS was issued the loan and, with Brown's assistance, he attempted to withdraw his entire balance in increments of less than $10,000 in order to avoid currency transaction reporting. WILLIAMS in fact received $5,000 cash and received an additional $5,000.00 check. Afterward, TEFCU detected fraudulent activity and suspended WILLIAMS's account. WILLIAMS never repaid the money.

On October 14, 2009, WILLIAMS and Brown entered a Harford County Maryland Federal Credit Union ("HARCO") branch in Aberdeen, Maryland where Williams completed an account application and a fraudulent $32,160.00 vehicle loan application for a 2007 Cadillac Escalade, which contained false and misappropriated attending documentation, including a stolen pay-stub and a false vehicle invoice provided by Andre Duncan. WILLIAMS purported to purchase the vehicle from Duncan's dealership while knowing that Duncan did not have that vehicle in his dealership inventory. WILLIAMS's application listed his address as 1007 Pirates court, Edgewood, Maryland 20140, the address often used by Brown and other associates for additional fraudulent loans.

On October 15, 2009, WILLIAMS, using the same false and stolen personal information, applied for and received a $10,000 Line of Credit with HARCO. WILLIAMS withdrew $2,032.70 before the credit union was able to freeze the line of credit because of detected fraudulent activity. WILLIAMS never repaid the money.

The total loss for the transactions described above was $57,160.00.

I have read this Statement of Facts and have carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

3-24-14
Date

Troy Williams

I am Troy Williams' attorney. He has read this Statement of Facts. In addition, I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

3-24-14
Date

Marc Hall, Esq.

2